IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Alan Hendrickson,<br><br>    Plaintiff,<br><br>v.<br><br>The Prudential Insurance Company of America,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:15-cv-565-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court is Defendant The Prudential Insurance Company of America's motion for summary judgment of all of Plaintiff Alan Hendrickson's claims for short-term and long-term disability benefits under the Employee Retirement Income Security Act.[1] (Defendant's Motion, ECF No. 40.) Prudential argues summary judgment is proper because Mr. Hendrickson failed to exhaust his administrative remedies and, in the alternative, that Prudential did not abuse its discretion in denying Mr. Hendrickson's claim for short-term disability benefits. (Dkt. No. 40.) The court held oral argument on October 18, 2017. (Dkt. No. 50.) Having carefully considered the arguments set forth in the briefs and during oral argument, the court now GRANTS Prudential's motion and ORDERS summary judgment be entered in Prudential's favor.

---

[1] At the outset of this action, Mr. Hendrickson also set forth a claim for breach of contract. The court dismissed that claim with prejudice on June 17, 2016. (Dkt. No. 27.)

## BACKGROUND[2]

Mr. Hendrickson formerly worked as a salesperson for Hilton. (Plaintiff's Response to Mot. Summ. J. 2, ECF No. 41.) Through his employment, Mr. Hendrickson participated in The Hilton Worldwide, Inc., Welfare Benefit Plan, which included short-term and long-term disability benefits that Prudential insured under Group Contract No. G-51532-VA (The Plan). (*Id.*)

Addressing the beneficiary directly, the Plan "provides financial protection by paying a portion of your income while you are disabled," PRU 124, and states that "disability" exists if Prudential "determines that: you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to ***sickness*** or ***injury***; you are under the ***regular care*** of a ***doctor***; and you have a 20% or more loss in ***weekly earnings*** due to the same sickness or injury." PRU 133 (emphasis in original). Regular occupation, which is at issue in this case, is defined as "the occupation you are routinely performing when your disability begins" and includes "your occupation as it is normally performed," rather than "how the work tasks are performed for a specific employer or at a specific location." PRU 133.

The Plan vests "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits" in "The Prudential Insurance Company of America as Claims Administrator." PRU 119. The Plan also states that a claimant will receive notice of a claim determination within forty-five days of the receipt of the claim, with the possibility of that deadline being extended by thirty days when necessary. PRU 119. In the case

---

[2] The facts asserted are based on the parties' statements of undisputed facts, the complaint, and the record upon which Prudential relied in denying Mr. Hendrickson's request for short-term disability benefits. In recounting these facts, the court makes no findings as to their truth.

2

of a denied claim, the Plan requires written notice detailing the reasons for the denial, identifying the Plan provision upon which the determination was made, a description of any materials that were missing from the original claim, "a description of Prudential's appeals procedures and applicable time limits," and an explanation of the scientific or clinical judgment if the adverse determination was based on a medical necessity or similar exclusion or limit. PRU 119–20. Regarding the appeal process, the Plan says that upon an adverse determination, "you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied." PRU 120. It also states the form in which appeal may be filed and authorizes access to records upon request. PRU 120. The appeal process also includes a second level of appeal, which the Plan refers to as "a second, voluntary appeal of your denial" and about which the Plan states, "[i]f you elect to initiate a lawsuit without submitting to a second level of appeal, the [P]lan waives any right to assert that you failed to exhaust administrative remedies." PRU 121.

On April 7, 2014, Mr. Hendrickson ceased working for Hilton, and in June 2014, he filed a claim for short-term disability benefits, asserting that work-related stress, anxiety, and panic attacks precluded him from working. (Plaintiff's Response to Mot. Summ. J. 4 & 10–11, ECF No. 41.) Mr. Hendrickson submitted an Attending Physician Statement executed on July 1, 2014, by Dr. Robert W. Hamilton, who is a family practitioner. (*Id.* at 11.) Dr. Hamilton opined that Mr. Hendrickson suffered from panic attacks, stress, and anxiety but that he would be able to return to work by December 27, 2014. (*Id.*) Mr. Hendrickson also submitted an Activities of Daily Living Questionnaire in which he noted that he had trouble sleeping but that had improved with medication; that he could dress and groom himself; that he drives and shops multiple times

a week without assistance; and that he reads, watches TV, walks between one and three miles per day, uses a computer, and visits friends. (*Id.* at 12.) Prudential also reviewed medical records from Nurse Practioner Renae Lynn Power and Dr. Hamilton from April to July 2014. (*Id.* at 13–16.) Prudential employee Collette Howe, RN, conducted an internal medical review and concluded that the medical documents demonstrated stress, anxiety, and depression brought on by Mr. Hendrickson's particular work environment, but also concluded that the record did not support an inability to work in his regular profession. (*Id.* at 16–17.)

On July 25, 2014, Prudential notified Mr. Hendrickson that his short-term disability claim was denied. (Plaintiff's Response to Mot. Summ. J. 4–5, ECF No. 41.) The notice detailed the documents Nurse Howe had reviewed and explained that the medical documentation on file "does not support an inability to perform the material and substantial duties of your regular occupation as a salesperson, but rather suggest that your stress, anxiety and depression are a direct result of your work environment, and there is no evidence to suggest that you are globally impacted." PRU 059–60.

The notice of denial also conveyed the following regarding Mr. Hendrickson's ability to appeal: "If you disagree with this decision you have the right to appeal. We have enclosed information on our appeal process should you choose to appeal this decision. The enclosure also lists the information that should be included with your appeal. If you wish to appeal, you must follow the process in the enclosure and submit your written appeal within 180 days of receiving this letter." PRU 060. Prudential enclosed a document named "Appeal Rights" in which the fact that Mr. Hendrickson "ha[d] a right to appeal [its] decision" was disclosed and procedures for appeal and review of the appeal were set out. *Id.* The enclosure also noted that "[i]f our decision

to deny benefits is upheld at the first level of appeal, you . . . may file a voluntary second appeal" but also that "[a]fter completion of the first level of appeal, you may also file a lawsuit under the Employment Income Security Act (ERISA). . . . Your decision on whether to file a second appeal will not affect your rights to sue under ERISA." *Id.* Finally, the enclosure addressed the timing for long-term disability claims subsequent to approval of short-term disability benefits. *Id.*

Sometime after the denial, Prudential received medical records from Dr. Alteen A. Lee.[3] (Plaintiff's Response to Mot. Summ. J. 4–5, ECF No. 41.) A second Prudential representative, Kaitlin Hamilton, RN, BSN, reviewed Mr. Hendrickson's file, including Dr. Lee's records, on August 1, 2014. (*Id.*) Based on Ms. Hamilton's review, Prudential wrote a second letter to Mr. Hendrickson in which it noted that the records showed Mr. Hendrickson's symptoms "stem[] from work related stress" and that, "[g]iven the available medical, one would not expect resulting limitations nor medical reasons that would restrict your functional capacity in regards to the above condition from Last Day worked through to the present time." PRU 064. The letter also stated: "You were also advised in our July 25, 2015 letter that you had 180 days from your receipt of that letter to appeal the decision. If you choose to appeal, you must do so within 180 days of your receipt of the July 25, 2014 letter." PRU 065.

Mr. Hendrickson did not file anything with Prudential after the August 1, 2014 letter. (Plaintiff's Response to Mot. Summ. J. 8, ECF No. 41.) Believing he could not submit a claim for long-term disability until Prudential approved a claim for short-term disability, Mr.

---

[3] The parties dispute how Prudential came to possess the records from Dr. Lee. In its opening brief, Prudential stated that Mr. Hendrickson provided the records, a fact which Mr. Hendrickson stated is undisputed. (Plaintiff's Response to Mot. Summ. J. 6, ECF No. 41.) But in its reply brief, Prudential stated that in fact Dr. Lee's records were submitted to Prudential by Dr. Lee in response to Prudential's documents request. (Defendant's Reply in Support Mot. Summ. J. 9, ECF No. 43.) The record citations that Mr. Hendrickson provided support Prudential's claim in its reply. PRU 042–45 & 64. Therefore the court does not further consider Mr. Hendrickson's claim that the submission of Dr. Lee's records constituted an appeal.

Hendrickson filed no claim for long-term disability. (*Id.*) On August 5, 2015, he filed the instant lawsuit for short- and long-term disability benefits as well as pre- and post-judgment interest and attorney fees and costs. (Complaint 31, ECF No. 2.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must "view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

## ANALYSIS

Prudential argues it is entitled to summary judgment because Mr. Hendrickson failed to exhaust his administrative remedies. An ERISA claimant must exhaust his or her administrative remedies by engaging in the review process set out in the plan documents before seeking judicial review of an initial denial. *Holmes v. Colo. Coal. for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1203 (10th Cir. 2014). Because "ERISA exhaustion is a judicial, not contractual, doctrine," if the plan states an internal appeal process, the plan need not state that an internal appeal is required. *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999). As the Ninth Circuit Court of Appeals has noted, the exhaustion requirement promotes "important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise."

*Diaz v. United Agr. Emp. Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir.1995). "Consequently the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [ ] as a matter of sound policy they should usually do so." *Id.* (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980)).

Mr. Hendrickson urges the court, however, to read the Plan as setting forth a permissive review procedure and therefore to conclude that exhaustion was not required in this case. Some courts have concluded that ERISA exhaustion is not required when a plan sets out permissive review procedures by using language such as "may" and "should" instead of "must." *See, e.g.*, *Watts v. Bellsouth Commc'ns, Inc.*, 316 F.3d 1203, 1209–10 (11th Cir. 2003) (concluding a claimant who reasonably interpreted "the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies . . . is not barred by the court-made [exhaustion] requirement from pursuing her claim in court"); *Livingston v. S.D. State Med. Holding Co., Inc.*, 411 F. Supp. 2d 1161, 1166 (Dist. S.D. 2006) (concluding the claimant was not required to exhaust her administrative remedies when the plan did "not clearly require exhaustion" based on Eighth Circuit precedent that beneficiaries "'must exhaust their administrative remedies if such exhaustion is mandated by the ERISA plan at issue'") (quoting *Burds v. Union Pac. Corp.*, 223 F.3d. 814, 817 (8th Cir. 2000)); *cf. Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 810 (7th Cir. 2000) (agreeing "with the plaintiff that use of phrases such as 'you may have [your claim] reviewed,' 'should you desire a review,' 'if you . . . wish to have the decision reviewed,' and 'you . . . may appeal,' given their plain meaning, indicate that a plan participant has the opportunity to participate in a voluntary, rather than mandatory review procedure" but concluding that estoppel did not bar enforcement of the exhaustion requirement

where the claimant failed to demonstrate she relied on the plan's statements to her detriment) (alterations in original). *But see Greifenberger v. Hartford Life Ins. Co.*, 131 Fed. Appx. 756, 758 (2d Cir. 2005) ("Thus, the inclusion of the term 'may' in Hartford's policy cannot excuse Greifenberger from the duty to exhaust administrative review before filing suit under ERISA.").

Mr. Hendrickson has not, however, pointed the court to any Tenth Circuit Court of Appeals decision distinguishing between permissive and mandatory language in determining whether ERISA exhaustion is required, and the court has found no such case while conducting its independent research. Instead, the Tenth Circuit has stated that claimants are required to "exhaust internal claim review procedures provided by the plan before bringing a civil action." *Holmes*, 762 F.3d at 1203. And when faced with an argument that plan documents used permissive language, the Tenth Circuit rejected that argument, concluding that "[b]ecause the exhaustion requirement is not rooted in the particular language of an ERISA plan, Appellants cannot rely on the permissive language in [the defendant's summary plan description] to excuse a failure to exhaust." *Whitehead*, 187 F.3d at 1190.[4]

Therefore, in the Tenth Circuit exhaustion is required when a plan sets out an administrative review process, unless exhaustion would be futile or the administrative remedy is inadequate and that exhaustion is deemed satisfied "if a plan fail[s] to establish or follow claims procedures consistent with the requirements of ERISA." *Holmes*, 762 F.3d at 1204. Mr. Hendrickson has not argued any of these exceptions apply. Thus, he was required to exhaust

---

[4] During oral argument on the motion for summary judgment, counsel for Mr. Hendrickson directed the court to footnote 6 in *Whitehead*, which states: "Given the relevant permissive language of OG & E's SPD, we do not comment upon the applicability of the exhaustion doctrine when an SPD affirmatively states that exhaustion is not required." 187 F. 3d at 1190 n. 6. Counsel suggested the footnote may provide the court some flexibility to rule in his client's favor. The court is unpersuaded, however, that the footnote applies to the Plan language related to the first level administrative appeal, which contains no affirmative language waiving the exhaustion requirement.

8

his administrative remedies, and having failed to do so his claim for short-term disability is barred. Further, his claim for long-term disability is precluded because qualification for long-term disability benefits is contingent in part upon receipt of short-term disability benefits. PRU 310.

## CONCLUSION

Because Mr. Hendrickson failed to exhaust his administrative remedies, his claims are barred, and the court GRANT summary judgment in Prudential's favor and the action is dismissed with prejudice. (Defendant's Motion, ECF No. 40.)

DATED this 19th day of October, 2017.

BY THE COURT:

*Clark Waddoups*

Clark Waddoups
United States District Judge